*743 OPINION.
McMahon :
The Commissioner disallowed as an expense deduction an item of $2,200 set up at the end of the fiscal period on the books of account of petitioner and representing the balance due on account of a catalogue published during the fiscal period, on the ground that this amount was not a proper deduction for the taxable year in question, but an expense prepaid.
Thomas F. Osborn, petitioner’s secretary and treasurer, testified that, because of the loss of the Oliver Chilled Plows Company contract in June, 1920, which was petitioner’s major line, the catalogue just published became obsolete. Even though the intention of the petitioner at the time the catalogues were published was to use the catalogues for several years, supplemented by price lists, as indicated by the custom followed in prior years, when the catalogues for some unforeseen occurrence became obsolete in the year publishd, as in this proceeding, the petitioner sustained an operating loss which it is entitled to deduct in such year. As the catalogues became obsolete in the year published and as petitioner’s liability for the cost of the catalogues was fixed at the time of the delivery and acceptance thereof, and fully accrued on petitioner’s books and credited in full on the printer’s account, which was an open account, the balance of the cost of the catalogues, in the amount of $2,200, is deductible as a business loss sustained during the taxable year. Cf. Tom Moore, 19 B. T. A. 140; H. K. Gardiner, 7 B. T. A. 1089; A. W. D. Weis, 13 B. T. A. 1284; Fraser Brick Co., 10 B. T. A. 1252; and Deerland Turpentine Co., 4 B. T. A. 1236.
The petitioner contends that its excess-profits taxes should be computed under the provisions of sections 327 and 328 of the Revenue Act of 1918 because (1) its invested capital can not be properly determined because of the impossibility of determining the value of the good will and agency contracts acquired through purchase by it of the business theretofore conducted by B. Hayman, and (2) its taxable income is abnormal in that salaries paid by the petitioner to its officers and rent paid by the petitioner for its place of business are abnormally low.
The petitioner’s claim that it is impossible to determine its invested capital is based upon the fact that at the time of its organization it acquired for all but three shares of its capital stock the entire business of B. Hayman, including the good will of the going business, and cer *744 tain agency contracts of B. Hayman not included in invested capital by the Commissioner, which petitioner claims were of considerable value in excess of the par value of the stock paid therefor. There is no evidence whatever from which we can determine the value of the good will of the business of B. Hayman except that he had been in-that business for a considerable length of time and had had for years a number of these contracts which were turned over to the petitioner. The fact that these contracts were on a yearly basis is not sufficient to show that the value thereof, if any, can not be determined. No evidence was presented from which we'can determine that it is impossible to ascertain the value, if any, of the good will and contracts. Their exclusion, therefore, from invested capital is not a ground for granting special assessment. Keystone Wood Products Co., 19 B. T. A. 1116; Electric Appliance Co., 19 B. T. A. 707; and Coca-Cola Bottling Works of Pittsburgh, 19 B. T. A. 267.
The petitioner claims that the salaries paid its officers were wholly inadequate to compensate for the services rendered by them. It argues that the conservatism of its officers, who also owned all the capital stock of the petitioner, as shown in paying themselves salaries just sufficient to cover their living expenses, resulted in an increase to its surplus available for dividends and that it was of no concern to these officers whether they'were compensated in the form of salaries or in the form of dividends. This conservatism, however, in increasing surplus effected an increase .in invested capital. However, mere inadequacy of salary does not, of itself, create an abnormality. Primrose Tapestry Co., 20 B. T. A. 702. In our opinion the evidence is not sufficient to enable us to determine that the low salaries paid the officers created an abnormality within section 327 of the Bevenue Act of 1918. California Vegetable Union, 23 B. T. A. 935. Abnormality is a fact that must be determined in each case and the burden of proof in this respect is upon the petitioner. Primrose Tapestry Co., supra; Clark Brown Grain Co., 18 B. T. A. 937; Wright Lumber Co., 17 B. T. A. 814.
What has been stated in reference to the low salaries paid to officers may be applied also to the contention that the payment of low rental by the petitioner created an abnormality. Kimball Tyler Co. of Maryland, 18 B. T. A. 729, and Wright Lumber Co., supra. There was no evidence of a reasonable rental for the property or sufficient evidence from which the reasonable rental can be determined. We are, therefore, unable to say that the rent paid created such an abnormality as to justify special assessment. Henry F. Michell Co., 16 B. T. A. 1297.
,The fact that the income of the petitioner was very high or about 95 per cent of invested capital is not a ground in itself for comput *745 ing its tax under section 327 of the Revenue Act of 1918. Wright Lumber Co., supra; Moses-Rosenthal Co., 17 B. T. A. 622; and Enameled Metals Co., 14 B. T. A. 1392.
At the hearing the petitioner also contended that it was required to borrow large sums of money in the conduct of its business, which created a hardship and abnormality. This contention was not referred to in its brief and apparently has been abandoned by the petitioner. There is evidence showing that the petitioner borrowed money during the taxable year in question, but there is no evidence whatever showing that the use of it created an abnormal condition or that the borrowing of such money was unusual in a business of its kind. Therefore there is no evidence on which we can base an opinion of either normality or abnormality. Little Rock Tent & Awning Co., 22 B. T. A. 1204; Primrose Tapestry Co., supra; and Clark Brown Grain Co., supra.
Nor does an aggregate of a number of conditions, each inadequate in itself, necessarily constitute a basis for special assessment. Primrose Tapestry Co., supra; and Semon Bache & Co., 20 B. T. A. 275.
No abnormality within section 327 of the Revenue Act of 1918 having been shown to exist, in our opinion, the petitioner is not entitled to the benefit of the special assessment provision.
The petitioner contends that the collection of the unpaid balance of $9,589.04 of the original tax is barred by the statute of limitations. To refute this contention the respondent presented five waivers as set forth in our findings of fact, which he contended extended the statutory period of limitation.
Section 506 of the Revenue Act of 1928, amending section 278 of the Revenue Act of 1926, is as follows :
Sec. 606. WAIVERS AFTER EXPIRATION OF PERIOD OF LIMITATION.
(a) Section 278 (c) and (d) of the Revenue Act of 1926 are amended to read as follows:
*******
“(d) Where the assessment of any income, excess-profits, or war-profits taxes imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.”
(b) Section 278 of the Revenue Act of 1926 is further amended by adding at the end thereof a new subdivision to read as follows:
“ (f) Any agreement which would be within the provisions of subdivision (c)or (d) of this section but for the fact that it was executed after the expiration of the period of limitation extended by such agreement, shall be valid and *746 effective according to its terms if entered into after the enactment of the Revenue Act of 1928 and before January 1, 1929.”
(c) The amendments made by this section to the Revenue Act of 1926 shall not be construed as in any manner affecting the validity of waivers made prior to the enactment of this act, which shall be determined according to the law in existence at the time such waiver was filed.
In examining these five waivers we find that the fourth waiver entered into on October 15,1928, extending the time within which to collect the taxes herein involved to December 31, 1929, comes squarely within subdivision (f) of the above quoted section, as it was entered into after the enactment of the 1928 Act, May 28, 1928, and before January 1, 1929. It is therefore valid and effective according to its terms. Knight-Campbell Music Co. et al., 23 B. T. A. 1233; F. A. Gillespie, 20 B. T. A. 1068.
The fifth waiver was executed October 16,1929, before the expiration of the time fixed in the fourth waiver, and provides that the unpaid portion of the income tax assessed for the year ended August 31, 1920, may be collected by distraint or by a proceeding in court begun at any time prior to December 31, 1930. Since the fourth waiver was validated by subsection (b) of section 506 of the Bevenue Act of 1928 and since section 506 (a), supra, provides that the period agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon, the fifth waiver in our opinion is also ■ valid and effective according to its terms.
Since we have concluded that the fourth and fifth waivers are valid and effective according to the terms thereof, it is unnecessary in our opinion, to consider and determine the validity of the first three waivers.
The guarantee by the First National Bank of Los Angeles to secure payment of the outstanding assessment in the event the claim in abatement filed by the petitioner was disallowed does not constitute a waiver of the statute of limitations. Gulf States Steel Co., 12 B. T. A. 1244; C. B. Shaffer, 12 B. T. A. 298.
Reviewed by the Board.

Judgment will be entered under Rule 50.

YaN Foss AN dissents.